UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIK TWEDE, et al., | CASE NO. C16-1761JLR |
| Plaintiffs, | ORDER ON MOTION TO |
| v. | DISMISS |
| UNIVERSITY OF WASHINGTON, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant University of Washington's ("UW") Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) motion to dismiss Plaintiffs Erik Twede, Barry Long, and Olivia Williams's first amended complaint.  (*See* MTD (Dkt. # 32); *see also* FAC (Dkt. # 30).)  The court has considered the motion, Plaintiffs' response (Resp. (Dkt.

//

//

//

# 35)), UW's reply (Reply (Dkt. # 36)), the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part the motion.

## II. BACKGROUND

On November 14, 2016, Plaintiffs filed their original complaint alleging that 86 of UW's parking lots[2] violate Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and the Washington Law Against Discrimination ("WLAD"), RCW ch. 49.60. (Compl. (Dkt. # 1); *see also* FAC.) Plaintiffs allege that they "are individuals with mobility impairment disabilities." (*See id.* ¶ 5; *see also* FAC ¶ 5.) Mr. Twede alleges that he "uses a powerchair and modified van with a ramp for transportation." (Compl. ¶ 8; *see also* FAC ¶ 10.) Mr. Long and Ms. Williams both allege that they "use[] a manual wheelchair for transportation." (Compl. ¶¶ 15, 22; *see also* FAC ¶¶ 17, 24.) All three Plaintiffs allege they "require[] accessible parking and an accessible route to patronize places of public accommodation, such as the parking lots and facilities operated by [UW]." (Compl. ¶¶ 8, 15, 22; *see also* FAC ¶¶ 19, 17, 24.) In their complaint, Plaintiffs allege that "the vast majority of the parking lots" at UW "are not in compliance with the 1991 ADA standards

---

[1] No party has requested oral argument, and the court does not consider such argument to be necessary to its disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(2).

[2] There are 86 discrete parking lots referenced in Plaintiffs' first amended complaint and its exhibits. (*See generally* FAC.) The first amended complaint references 85 lots, and the exhibits identify 80 lots. (*See id.*) Most of the lots identified in the first amended complaint and its exhibits overlap, but there are a few discrepancies. (*See id.*)

and 2010 ADA standards." (Compl. ¶ 6; *see also* FAC ¶ 6.) Plaintiffs' complaint

attaches 60 pages of exhibits which allegedly inventory problems with nearly every

parking lot, such as the number of accessible and van accessible parking spots, the size

and slope of the parking spaces and access aisles, and the presence, absence, or height of

parking signage. (Compl. Exs. A-E; *see also* FAC Exs. A-E.)

On September 21, 2017, Plaintiffs filed a first amended complaint. (*See* FAC.)

Plaintiffs' first amended complaint reiterates the parking lot allegations but adds new

allegations that the parking lots and structures contain "accessible routes" to certain

unidentified building entrances that "do not comply with 1991 and 2010 ADA

standards." (*Id.* ¶ 6.) The first amended complaint also alleges that the parking lots

contain "other forms of ADA non-compliance," including "inaccessible pay kiosks,

insufficient/unsafe accessible routes, including ramps, curb ramps, paths of travel, and

signage barriers." (*Id.*) In addition, the first amended complaint alleges that UW violates

the ADA by not ticketing vehicles parked in accessible spots which lack a disabled

parking permit, and by issuing disabled parking permits to persons who do not have

"state-issued disabled parking placards." (*Id.* ¶¶ 7-8, 54-55.) Like Plaintiffs' original

complaint, the first amended complaint raises claims under Title II of the ADA, the RA,

and the WLAD (*id.* ¶¶ 56-85) and seeks only declaratory and injunctive relief (*id.* § VII).

Mr. Twede alleges that he regularly travels to UW Medical Center and

"encounter[s] a number of barriers to access" at the "'Triangle' (C20 and C21) and

'Surgery Pavillion' (UMSP) parking lots," which are located near the UW Medical

Center. (*Id.* ¶¶ 11-14.) He alleges that he has "patronized these parking lots in the past

and intends to do so in the future." (*Id.* ¶ 15.)  He does not allege that he has visited or attempted to visit any of the other 86 UW parking lots mentioned in the first amended complaint.  (*See generally id.*)  He asserts, however, that he "has knowledge of . . . accessibility barriers at each [UW] campus parking facility alleged in [the first amended] complaint and exhibits which he has either encountered personally or is specifically aware of." (*Id.* ¶ 16.)  Finally, he alleges that "he is and will continue to be dissuaded from using these other UW parking facilities." (*Id.*)

Ms. Williams claims that she is a sophomore at UW and regularly travels to UW for classes.  (*Id.* ¶ 25.)  Similar to Mr. Twede, Ms. Williams alleges that she "has encountered a number of barriers to access" at the "N22" and "W35" parking lots, which are "popular places to park for students attending classes and civic, social, and entertainment events at UW." (*Id.* ¶¶ 26-28.)  She alleges that she has "patronized these parking lots in the past and intends to continue to do so in the future." (*Id.* ¶ 29.)  She does not claim to have visited or attempted to visit any of the other 86 UW parking lots mentioned in the first amended complaint.  (*See generally id.*)  Like Mr. Twede, she asserts that she "has knowledge of . . . accessibility barriers at each [UW] campus parking facility alleged in [the first amended] complaint and exhibits which she has either encountered personally or is specifically aware of." (*Id.* ¶ 16.)  Finally, she alleges that "she is and will continue to be dissuaded from using these other UW parking facilities." (*Id.*)

Mr. Long alleges that he regularly travels to UW for Spinal Cord Injury Forum meetings, medical appointments, speaking engagements, business meetings, social

activities, and sporting events.  (*Id.* ¶ 18.)  Mr. Long alleges that he has patronized 32 parking lots at UW[3] and intends to do so in the future.  (*Id.* ¶¶ 19, 21.)  Unlike the other two Plaintiffs, Mr. Long does not say that he has personally encountered any barriers to access at any of UW's parking facilities.  (*See id.* ¶¶ 17-22.)  Instead, he alleges generally that he "has knowledge of . . . accessibility barriers at each [UW] parking facility alleged in [the first amended] complaint and exhibits which he has either encountered personally or of which he is specifically aware."  (*Id.* ¶ 22.)  Finally, he claims that because of his knowledge he "will continue to be dissuaded from using these other UW parking facilities."  (*Id.* ¶ 22.)

## III.     ANALYSIS

UW brings a motion to dismiss Plaintiffs' ADA and RA claims on grounds of lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.  (*See* MTD at 1 (citing Fed. R. Civ. P. 12(b)(1) and 12(b)(6)).)  The court now considers Plaintiffs' motion.

**A.     Legal Standards**

1.  <u>Article III Standing and Rule 12(b)(1) Motion</u>

UW challenges Plaintiffs' standing under Article III of the Constitution.  (MTD at 7-17.)  Article III's "case and controversy" requirement obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit.  *Lance v.*

---

[3] Mr. Long says that he "has patronized" the following UW parking lots:  E1, E6, E8, E9, E12, E12G, E18, E19, S1, S8, Surgical Pavilion, Triangle, C1, C2, C3, C4, C5, C6, C7, C8, W10, W12, W40, W41, W46, N1, N5, N16, N18, N20, N21, and N24.  (FAC ¶¶ 19, 21.)

*Coffman*, 549 U.S. 437, 439 (2007); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits.") (citation, alteration, and internal quotation marks omitted).  At the pleading stage, to satisfy the standing requirement plaintiffs must allege:  (1) that they have suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury will likely be redressed by a favorable decision.  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).  The party seeking to invoke federal court jurisdiction has the burden of establishing standing.  *See Lujan*, 504 U.S. at 561.

Challenges to Article III standing are evaluated under Rule 12(b)(1).  *Maya*, 658 F.3d at 1067.  UW brings a Rule 12(b)(1) "facial" challenge to Plaintiffs' allegations.  (*See* MTD at 7.)  Where a defendant makes a facial attack on jurisdiction, a court takes the factual allegations of the complaint as true, and construes them in the light most favorable to the plaintiffs.  *See Maya*, 658 F.3d at 1068-69; *see also Lujan*, 504 U.S. at 561.  "This is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury."  *Maya*, 658 F.3d at 1068 (internal footnotes omitted) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689-90 (1973)).  The Supreme Court, however, cautions courts "to take a broad view of constitutional standing in civil rights cases,

especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co*., 409 U.S. 205, 209 (1972)).

2. Rule 12(b)(6) Motion

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 690 (9th Cir. 2011). However, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). Although a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B.     Article III Standing**

In *Doran*, the Ninth Circuit stated that "it is access barriers that the ADA plaintiff actually encountered or about which he had personal knowledge that 'confer' standing on

him under Article III." 525 F.3d at 1042 n.5. "Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact . . . under Article III." *Id.* The encountered barrier must interfere with the particular plaintiff's full and equal enjoyment of the facility, making his use of the facility more difficult than a nondisabled individual's, to constitute an injury-in-fact. *Chapman v. Pier I Imports (U.S.), Inc.*, 631 F.3d 939, 947 n.4 (9th Cir. 2011).

In addition, "a plaintiff seeking injunctive relief must . . . demonstrate 'a sufficient likelihood that he will again be wronged in a similar way'—in other words "he must establish a 'real and immediate threat of repeated injury.'" *Id.* at 948 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 102, 111 (1983)). An ADA plaintiff can establish this element by alleging that (1) "he intends to return to a noncompliant accommodation" and thus "is likely to reencounter a discriminatory architectural barrier," or (2) "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id.* at 950; *see also id.* at 953 ("An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and therefore is likely to suffer repeated injury."); *Kirola v. City & Cty. of S.F.*, 860 F.3d 1164, 1175 (9th Cir. 2017) ("The standard for injury in fact is whether [the plaintiff] has encountered at least one barrier that interfered with her access to the particular public facility and whether she intends to return or is deterred from returning to that facility."). An ADA plaintiff "lacks standing if he is indifferent to returning to the

//

[facility],'" "if his alleged intent to return is not genuine," or if "he is not reasonably like to encounter" the barriers at issue. *Chapman*, 631 F.3d at 953.

UW argues that Plaintiffs fail to allege an injury-in-fact that results from a violation of the ADA. (*See* MTD at 8.) Collectively, Plaintiffs allege that they have visited 35 of the 86[4] parking lots referenced in the first amended complaint and its exhibits. (*See* FAC ¶¶ 12, 14-15, 19, 21, 26, 28-29.) UW argues that Plaintiffs lack standing both for the parking lots that they have visited and for those that they have not visited. (MTD at 8-14.) The court will address each argument in turn.

1. <u>Visited Parking Lots</u>

UW relies on the Ninth Circuit's decision in *Chapman* to argue that Plaintiffs' allegations concerning the UW parking lots they have visited are inadequate to confer Article III standing.[5] (*See* MTD at 8-12.) The court is persuaded, however, that *Chapman* is distinguishable and that Plaintiffs' allegations are sufficient to confer standing for the visited parking lots.

In *Chapman*, the plaintiff's complaint contained bare allegations that he was "physically disabled," that he "visited the [facility]," and that he "encountered architectural barriers that denied him full and equal access." 631 F.3d at 954. The

_____

[4] *See supra* n.2.

[5] *Chapman* involved a challenge under Title III of the ADA, which address discrimination in public accommodations, 631 F.3d at 950, whereas Plaintiffs assert claims under Title II of the ADA, which addresses discrimination in public services (FAC ¶¶ 56-67). "[D]espite the titles' different application and different standards for relief on the merits, the answer to the constitutional question of what amounts to injury under Article III is the same." *Kirola*, 860 F.3d at 1175 n.3.

complaint contained no allegations concerning "what those barriers were and how his disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement." *Id.* Instead, the complaint merely attached an "Accessibility Survey" listing barriers that the plaintiff alleged "denied access to the [facility], *or* which he seeks to remove on behalf of others under related state statutes." *Id.* (italics in original). Like the complaint, the "Accessibility Survey" merely identified alleged barriers "without connecting the alleged violations to [the plaintiff's] disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the [facility]." *Id.* Thus, the *Chapman* court held that the complaint "left the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access" and failed to "identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability." *Id.* at 955. Ultimately, the court held that due to these pleading deficiencies, the plaintiff failed to allege an injury-in-fact. *Id.*

In contrast to the allegations in *Chapman*, Plaintiffs' allegations here are more specific. First, the first amended complaint contains identifies which parking lots were visited or patronized by each Plaintiff. (FAC ¶¶ 12, 14-15, 21-22, 26, 28-29.) They allege that they have "mobility impairment disabilities," use a "powerchair and modified van with a ramp" or "manual wheelchair" for transportation, and require "accessible parking and an accessible route to be able to patronize places of public accommodation." (*Id.* ¶¶ 10, 17, 24.) Further, each Plaintiff alleges his or her knowledge of the barriers at

issue and connects each barrier to his or her disability—explaining the impact that the barriers have on his or her access to the facility.  (*See id.* ¶¶ 6, 14, 16, 22, 28, 30.)

For example, Mr. Twede states that he has "encountered a number of barriers to access" at the two lots he has visited that include but are not limited to:

> . . . not enough accessible parking spaces and accessible routes with obstructions at the Surgery pavilion lot; and not enough van accessible parking spaces, insufficient accessible parking signage, missing access, aisles, insufficient accessible routes, including curb ramps and ramps, accessible parking slope violations in the C20 and C21 garages.

(FAC ¶ 14.)  He further alleges that (1) he cannot safely use non-accessible parking spaces if an insufficient number of accessible parking spaces have been provided, (2) a lack of sufficient accessible parking signage means he may be forced to either park in an unsafe non-accessible parking space or be unable to park at all, (3) where the slope is not level, exiting and entering his modified van is impossible and/or dangerous, and (4) the lack of compliant curbs and curb ramps creates a tripping hazard.  (*Id.* ¶ 16(a), (d), (h)-(j).)

Ms. Williams states that she has "encountered a number of barriers to access" at the two lots she has visited that include but are not limited to:

> . . . insufficient accessible parking signage, insufficient accessible routes to surrounding campus buildings, and slope violations at N22; and not enough van accessible parking spaces, insufficient accessible parking signage, missing access aisles, insufficient accessible routes to surrounding campus buildings, and accessible parking slope violations at W35.

(*Id.* ¶ 28.)  She further alleges that (1) as a result of insufficient signage, she may be unable to find accessible parking and be forced to either park in an unsafe, non-accessible space or be unable to park at all, (2) not having sufficient accessible routes near

accessible entrances causes "risk and access barriers" when she travels from her vehicle to the accessible entrances of surrounding buildings, (3) exiting and entering her modified vehicle is impossible and/or dangerous when the slope of the accessible space is not level, (4) insufficient accessible van parking means that she may have to park in an unsafe non-accessible parking space or be unable to park at all, and (5) missing access aisles make exiting and entering her modified vehicle either impossible or dangerous. (*Id.* ¶ 30(c)-(f).)

Mr. Long's allegations are sparser than those of his fellow Plaintiffs. (*Compare id.* ¶¶ 17-22 *with id.* ¶¶ 10-16, 23-30.) Nevertheless, he alleges that he has "patronized" 32 UW parking lots and "has knowledge of . . . accessibility barriers . . . which he has either encountered personally or of which he is specifically aware."[6] (*Id.* ¶¶ 19, 21-22.) Like Mr. Twede and Ms. Williams, Mr. Long ties those barriers to his disability and the impact the barriers have on his access. (*See id.* ¶ 22(a)-(k).)

For Plaintiffs' allegations to be sufficient to establish Article III standing, they cannot simply plead that they are "physically disabled," and that they "visited the [facility]," and "encountered . . . barriers" that denied them "full and equal access." *Chapman*, 631 F.3d at 954. Instead, they must "identify how any of the alleged

---

[6] (*See also* FAC ¶ 6 ("Each Plaintiff has visited UW surface and parking structures, encountering a variety of barriers to full access guaranteed by the ADA, including too few regular accessible and van-accessible parking spaces under ADA numerical standards, facilities with inadequate signage and deficient size and slope specifications for existing parking spaces that are nominally accessible, facilities with insufficient and/or unsafe accessible routes, and facilities with inaccessible pay kiosks, insufficient/unsafe accessible routes, including ramps, curb ramps, paths of travel, and signage barriers, and entrances to the campus buildings served by these parking facilities among other forms of ADA non-compliance.").)

violations threatens to deprive [them] of full and equal access due to [their] disabilit[ies]
if [they] were to return to the [facility], or how any of [the alleged violations] deter
[them] from visiting the [facility] due to [their] disabilit[ies]." *Id.* at 955. In *Chapman*,
the Ninth Circuit held that the plaintiff failed to adequately plead standing because he did
nothing more than attach a list to the complaint that "identifie[d] alleged
ADA . . . violations without connecting the alleged violations to [the plaintiff's]
disability." *Id.* at 954. Here, Plaintiffs do more than merely identify barriers that they
encountered at the parking lots they visited; they also briefly describe how each barrier
affects them because of their disabilities. In other words, Plaintiffs "identify the nexus
between the alleged ADA-noncompliant barrier and the plaintiff's disability status" as
*Chapman* requires. *See Kohler v. Bed Bath & Beyond of Cal., LLC*, No. EDCV 11-01246
VAP, 2012 WL 2449928, at *5 (C.D. Cal. June 27, 2012). Plaintiffs' descriptions are
sufficient to satisfy Article III standing since they give rise to the plausible inference that
Plaintiffs will be deterred by the alleged violations from utilizing these parking lots they
have visited in the future or will continue to encounter unsafe conditions if they do.[7] *See*
*Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1174-75 (C.D. Cal. 2011) (distinguishing
*Chapman* on this basis). Accordingly, the court denies UW's motion to dismiss

---

[7] UW's assertion that Plaintiffs have no standing to challenge barriers that they have not "personally encountered" in the parking lots that they have patronized or visited is not legally sound. In *Doran*, the Ninth Circuit held that "[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008).

Plaintiffs' claims concerning the parking lots they visited on grounds that they lack Article III standing.

### 2. Unvisited Parking Lots

Plaintiffs allege that they have either visited or patronized only 35 parking lots at UW.[8] Nevertheless, their first amended complaint references at total of 86 lots.[9] UW argues that Plaintiffs lack standing to challenge barriers in the 51 parking lots they never visited. (MTD at 12-14.) UW argues that even if Plaintiffs have standing to challenge unencountered barriers at the parking lot they have visited, Plaintiffs lack standing to challenge barriers at parking lots they never visited because each lot represents a separate facility, and Plaintiffs fail to allege any intent or desire to patronize these unvisited lots in the future even assuming the alleged barriers are removed. (*See id.*)

As discussed above, "[t]he standard for injury in fact is whether [the plaintiff] has encountered at least one barrier that interfered with her access to the particular public facility and whether she intends to return or is deterred from returning to that facility." *Kirola*, 860 F.3d at 1175. "Standing for ADA claims is measured on a facility-by-facility basis." *Id.* at 1175 n.4. "Once a plaintiff has proven standing to challenge one barrier at a particular facility, that plaintiff has standing to challenge all barriers related to her

---

[8] Mr. Twede alleges that he has "patronized" three lots—"the 'Triangle' (C20 and C21) and 'Surgery Pavillion' (USMP) parking lots." (FAC ¶¶ 12, 14-15.) Mr. Long alleges that he has "patronized" 33 lots—assuming that his reference to the "Triangle" lot includes both C20 and C21, as it does for Mr. Twede. (*See id.* ¶¶ 12, 19, 21.) Ms. Williams alleges that she has "patronized two lots. (*Id.* ¶¶ 26, 28.) However, the three lots that Mr. Twede patronized are three of the same lots that Mr. Long patronized. (*See id.* ¶¶ 12, 19.) Thus, in total, Plaintiffs allege that they have visited a total of 35 UW parking lots.

[9] *See supra* n.2.

disability at that facility." *Id.* (citing *Doran*, 524 F.3d at 1047). However, a plaintiff "lacks standing if he is indifferent to returning to the [facility]," "if his alleged intent to return is not genuine," or "if he is not reasonably likely to encounter" the barrier at issue. *Chapman*, 631 F.3d at 953.

UW argues that each of the various parking lots distributed widely throughout its 600-acre campus constitutes a separate facility. (*See* Reply (Dkt. # 36) at 4 (citing Eskridge Decl. (Dkt. # 33) ¶ 9, Ex. F (attaching UW's current official campus map issued in May 2016)).)[10] In their first amended complaint, Plaintiffs implicitly acknowledge that UW's campus includes many "parking facilities"—not just one. (*See* FAC ¶¶ 6, 9, 16, 16(g)-(j), 22, 22(f)-(i), 24, 30, 30(f)-(i), 39-41, 46, 50, 52, 65, 65(b), 78 (repeatedly referring to UW's various parking lots as separate "parking facilities").) Further, Plaintiffs repeatedly allege that "each [UW] campus parking facility" violated the ADA (*id.* ¶¶ 16, 22, 28), and the first amended complaint analyzes ADA compliance on a parking facility-by-parking facility basis (*see* FAC Exs. A-E).

Further, this analysis is consistent with the 1991 and 2010 ADA standards, which set forth the design standards on a lot-by-lot or facility-by-facility basis, with a minimum number of accessible and van accessible spaces per number of parking spaces provided in

---

[10] UW asks the court to take judicial notice of this map. (MTD at 19-20.) Plaintiffs do not object. (*See generally* Resp.) UW is an agency of Washington State. *Hontz v. State*, 714 P.2d 1176, 1180 (Wash. 1986) (recognizing that the "[UW] is a state agency"). The court may take judicial notice of records of state and federal agencies and other undisputed matters of public record. *Lee v. City of L.A.*, 250 F.3d 688, 689 (9th Cir. 2001); *Disabled Rights Action Comm. v. Las Vegas Events*, 375 F.3d 871, 866 n.1 (9th Cir. 2004) (taking judicial notice of documents of state university, a state entity); *Mach v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may take judicial notice of records of administrative agencies). The court grants UW's request to take judicial notice of this public agency record.

each separate parking "lot," "parking area," or "parking facility."  28 C.F.R. Part 36, App. D § 4.1.2 (1991 Standards requiring minimum number of accessible spots based on the number of spaces in each separate "lot" or "parking area"); 36 C.F.R. Part 1191, App. B § 208.2 (same for 2010 Standards based upon each separate "parking facility"). Because UW's separately-identified parking lots each constitute a separate "facility" under the ADA, Plaintiffs do not have standing to challenge barriers in the 51 lots that they have neither visited and nor alleged an intent or desire to visit in the future.  *See Chapman*, 631 F.3d at 953 (holding that there is no standing if plaintiff is indifferent to returning to a facility or his alleged intent is not genuine); *see also Kirola*, 860 F.3d at 1175 (stating that standing is limited to "that facility" where the plaintiff encountered "at least one barrier"); *Moreno v. G & M Oil Co.*, 88 F. Supp. 2d 1116, 1117-18 (C.D. Cal 2000) (holding that the plaintiff lacked prudential standing to assert claims based on a generalized grievance of similar barriers at same defendant's 82 gas stations that the plaintiff had not visited or on injuries suffered by third parties at other locations).

To clarify, Plaintiffs need not physically visit a facility or encounter a barrier to allege an ADA claim, but they must at least attempt to access a facility or have an interest in doing so and have knowledge of the barrier or barriers at issue, which deter a desired visit.  For example, in *Civil Rights Education & Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("CREEC"), three plaintiffs attempted to visit three hotels, but were deterred from doing so when they called the hotels prior to their visits and learned that the hotels did not provide accessible shuttle services.  Thus, despite not physically visiting the hotels, the plaintiffs had standing to bring claims under

the ADA because they attempted to access the hotels by calling, learned about the barriers through their phone calls, and intended or planned to visit the hotels once the barriers were removed. *Id.* at 1098-100.

In contrast to the circumstances in *CREEC*, Plaintiffs do not allege that they have attempted to visit any of the unvisited parking lots. Likewise, Plaintiffs' first amended complaint contains no allegations suggesting that Plaintiffs are likely to visit, have any intention or desire to visit any of the 51 parking facilities that they have not visited. In the absence of such allegations, there is no basis to suggest that Plaintiffs are likely to be harmed by alleged barriers in these unvisited parking lots.

The closest Plaintiffs come to alleging such harm is when they state that they "face a future threat that they will encounter difficulty" at unvisited lots and that "[t]his threat has dissuaded them and will continue to dissuade them from using these . . . parking facilities." (FAC ¶ 52.) But lacking any allegation that Plaintiffs have any intent or desire to utilize the unvisited parking facilities if the alleged barriers were removed, Plaintiffs' conclusory allegations that they are dissuaded from using the facilities do not establish the requisite "real and immediate threat of repeated injury in the future," *Chapman*, 631 F.3d at 946, necessary for Article III standing here. The court therefore concludes that Plaintiffs lack standing to bring claims under the ADA concerning the 51 UW parking lots that they have not visited and have not alleged any genuine intent to visit in the future.[11]

---

[11] UW also argues that Plaintiffs lack standing because they fail to allege the "specific date on which each facility was constructed or last altered, but rather only generally allege[] that

## C. Rule 12(b)(6)

To demonstrate a prima facie case under Title II of the ADA (or the RA), plaintiff must show:

(1) she is an individual with a disability; (2) she has otherwise qualified to participate or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.

*Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014). UW challenges Plaintiffs' allegations concerning several aspects of these elements. The court addresses each of UW's argument in turn.[12]

### 1. Plaintiffs' Disabilities

In a footnote in its motion, UW argues that Plaintiffs fail to adequately plead the disability requirement of a Title II ADA claim. (MTD at 10 n.9.) Here, Plaintiffs allege that they have "mobility impairment disabilities" and require "accessible parking and an accessible route to be able to patronize places of public accommodation." (FAC ¶¶ 5, 10,

---

the "parking facilities operated by . . . UW were either constructed or altered after January 26, 1992." (*See* MTD at 14-17 (citing FAC ¶ 40).) The necessary elements of standing under the ADA do not require such allegations. *See supra* § III.B. Accordingly, the court will consider UW's argument in this regard as a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) and not as one based on standing.

[12] "There is no significant difference in analysis of the rights and obligations created by the ADA and [RA]." *See Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); *see also Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Indeed, both Plaintiffs and UW acknowledge that the court's analysis here concerning Plaintiffs' claims under each statute is the same. (*See* MTD at 23; Resp. at 22 n.47.) Thus, the court's rulings herein apply equally to Plaintiffs' ADA and RA claims.

17, 24.)  Plaintiffs also allege that they use either a manual wheel chair or a powerchair

and accessible van for transportation.  (*Id.* ¶¶ 10, 17, 24.)

       Under the ADA, the "disability" of an individual is defined as:

> (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (b) a record of such impairment; or
> (c) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Although the ADA does not define "major life activity," the Equal

Employment Opportunity Commission includes "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and

working."  29 CFR § 1630(2)(i).  Plaintiffs assert that their allegations of disability

"create a reasonable inference that Plaintiffs experience 'substantial limitation' in the

'major life activity' of walking."  (Resp. at 17.)

       "[C]ourts have generally required the plaintiff to plead the [element of] disability

with some factual specificity."  Klamut v. Cal. Highway Patrol, No. 15-cv-02132-MEJ,

2015 WL 9024479, at *7 (N.D. Cal. Dec. 16, 2015) (rejecting the adequacy of the

plaintiff's allegations that he suffered "a psychotic episode secondary to sleep deprivation

over a two-week period" and that he "suffered from a mental illness."); *see also Sanders*

*v. Arenson Prods., Inc*., 91 F.3d 1351, 1354 n.2 (9th Cir. 1996) ("We note that 'disability'

is susceptible to a broad variety of definitions and usages. . . . The ADA defines

'disability' with specificity as a term of art.  Hence, a person may be 'disabled' in the

ordinary usage sense, or even for purposes of receiving disability benefits from the

government, yet still not be 'disabled' under the ADA.").  Nevertheless, the court is not

to presume facts against Plaintiffs on a motion to dismiss. Moreover, Congress has instructed that the "definition of disability [under the ADA] shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Thus, although it is a close call, Plaintiffs' allegations of disability are adequate to survive a motion to dismiss. *See, e.g.*, *Barrilleaux v. Mendicino Cty.*, 61 F. Supp. 3d 906, 915 (N.D. Cal. 2014) (concluding that allegations that the plaintiff used crutches due to a "mobility impairment" following knee surgery and was able to walk only with "some pain and difficulty" were sufficient to survive a motion to dismiss).

    2. Parking Facilities Built Prior to January 26, 1992

    "An individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities." *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149). In defining accessibility, Title II's implementing regulations distinguish between newly constructed or altered facilities, which are covered by 28 C.F.R. § 35.151,[13] and existing facilities, which are covered by 28 C.F.R. § 35.150.[14] *Daubert*, 760 F.3d at 985. An existing structure or facility is defined as a

---

[13] This section provides, in pertinent part:

Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.

28 C.F.R. § 35.151.

[14] This provision states, in pertinent part:

facility constructed prior to January 26, 1992.  *Id.* at 986.  The ADA standards for existing facilities provides that "a public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities."  28 C.F.R. § 35.150(a)(1).  "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while at the same time, providing public entities with the flexibility to choose how best to make access available."  *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000).  "The overall policy of the ADA is to require relatively few changes to existing buildings, but to impose extensive design requirements when buildings are modified or replaced."  *Smith v. City of Lodi*, No. 2:14-cv-01318-TLN-AC, 2016 WL 3197552, at *3 (E.D. Cal. June 9, 2016) (quoting *Coal. of Montanans Concerned with Disabilities v. Gallatin Airport Auth.*, 957 F. Supp. 1166, 1168 (D. Mont. 1997)).  Although existing facilities are subject to a lesser standard than buildings constructed after January 26, 1992, *Smith,* 2016 WL 3197552, at *5, Title

---

> (a) General.  A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not—
>
> (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities; . . .
>
> (3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. . . .

28 C.F.R. § 35.150

II requires public entities to provide "meaningful access" to their programs and services, *see Lomberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009) ("[The] prohibition against discrimination is universally understood as a requirement to provide 'meaningful access.'").

Plaintiffs allege "[o]n information and belief" that "the parking facilities operated by . . . UW were either constructed or altered after January 26, 1992." (FAC ¶ 40.) Plaintiffs do not allege that any of the parking facilities predate January 26, 1992. (*See generally id.*) UW, however, argues that at least some of the University's parking lots in fact pre-date 1992. (MTD at 19 (citing Eskridge Decl. ¶ 5, Ex. B (attaching UW's Building Inventory); *id.* ¶ 6, Ex. C (attaching architectural plans showing lots C20 and C21 were constructed in 1983); *id.* ¶ 7, Ex. D (attaching architectural plans showing lots N16, N18, N20, N21 were constructed in 1967); *id.* ¶ 8, Ex. E (attaching architectural plans showing lots C1, C2, C3, C4, C5 and C6 were constructed in 1971)).)[15] Because some of the parking lots were constructed before January 26, 1992, UW argues that they are "existing facilities" under 28 C.F.R. § 35.150 and do not constitute a "service, program, or activity" under that regulation. (MTD at 17-19.) UW further argues that, even if these parking facilities do constitute a "service, program or activity" under 28

//

---

[15] UW asks the court to take judicial notice of these records. (MTD at 20-21.) Plaintiffs do not object. (*See generally* Resp.) The court takes judicial notice of these records. *See supra* n.10. The court may take judicial notice of public records from a state agency when ruling on a motion to dismiss. *See Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (holding that a court may take judicial notice of the records of a state administrative body on a motion to dismiss), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991).

C.F.R. § 35.150, Plaintiffs have not adequately alleged such a claim. (*Id.*; *see also* Reply at 8-10.) Plaintiffs do not challenge the contention that some of UW's parking lots were constructed prior to January 26, 1992, but argue instead that the UW parking lots at issue constitute a service or program that falls within the confines of 28 C.F.R. §35.150. (*See* Resp. at 17-20.)

UW argues that Plaintiffs mischaracterize UW's parking lots as a "service, program or activity" under 28 C.F.R. § 35.150. (MTD at 17.) As UW points out, under the ADA's regulations, parking lots, like buildings, are defined as facilities—not programs. (MTD at 17 (citing 28 C.F.R. § 35.104).) Indeed, Plaintiffs themselves repeatedly refer to the parking lots as "facilities" throughout their first amended complaint. (*See* FAC ¶¶ 7-8, 53-54, 65, 73, 80).) UW asserts that "no part of the [first amended complaint] sets out facts tending to show any Plaintiff has been denied access to or use of any [UW] service, program, or activity, such as education offered by [UW] or medical treatment offered at [UW's] Medical Center." (MTD at 18.) Plaintiffs do not dispute this characterization of their first amended complaint, but rather argue that parking itself is a "service, program, or activity" offered by UW under the ADA. (Resp. at 17-20.)

Plaintiffs rely primarily on *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014), in which the Ninth Circuit addressed whether on-street diagonal parking provided by a city government was subject to Title II. (Resp. at 18-20.) In *Fortyune*, the plaintiff was a paraplegic who sued the city under Title II of the ADA because none of the city's public on-street parking was accessible to people with disabilities. 766 F.3d at 1100-01.

The city moved to dismiss. *Id.* at 1100. The district court denied the city's motion,

ruling that the broad language of the ADA requires public entities, such as the city, to

ensure that all services, including on-street parking, are reasonably accessible to and

usable by individuals with disabilities. *Id.* On appeal, the Ninth Circuit affirmed the

district court, interpreting the term "services, programs, or activities" broadly, and stating

that the term brings "within its scope anything a public entity does." *Id.* at 1102 (quoting

*Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) & *Lee v. City of L.A.*,

250 F.3d 668, 691 (9th Cir. 2001)); *see also Bassilios v. City of Torrance*, 166 F. Supp.

3d 1061, 1074 (C.D. Cal. 2015) (concluding that on-street, parallel parking is a "program,

service, or activity," and thus "subject to the program-access requirements of Title II [of

the ADA] and Section 504 [of the RA]."). On this basis, Plaintiffs assert that UW's

parking lots are also a "service, program, or activity" similar to the on-street parking at

issue in *Fortyune* and *Bassilios* because providing parking is something that UW "does."

(Resp. at 19.)

There is no doubt that providing parking for those who visit its campus is

something that UW "does." However, the court's analysis does not end with the Ninth

Circuit's opinion in *Fortyune*. There is a distinction between the on-street parking

generally provided by a city to its citizens and visitors and the parking lots built by UW

so that its students, patients, and other patrons can access the various educational,

medical, and other services that UW provides. Indeed, since issuing *Fortyune*, the Ninth

Circuit "has rejected the notion that providing a particular facility is a service, program,

or activity for purposes of Title II" of the ADA, and has "focus[ed] instead on the broader

purpose for which the facility exists." *Rodriguez v. Cty. of San Diego*, No. 14CV949-JLS-RBB, 2016 WL 4515860, at *7 (S.D. Cal. Feb. 9, 2016).

Careful analysis of the Ninth Circuit's decision in *Daubert* illuminates this distinction. In *Daubert*, the plaintiff sued the defendant school district claiming ADA discrimination based on seating at the school district's football field. 760 F.3d at 985. The bleachers at the football field were constructed in 1971 and never altered. *Id.* at 984. Accordingly, the stadium was subject to the ADA's existing facilities standard. *Id.* at 987 (citing 28 C.F.R. § 35.150). Although the stadium provided some wheelchair accessible seating, the plaintiff alleged discrimination because he had an inferior view of the field, the accessible seating did not compare in quality or convenience to other seating, and the accessible seating did not allow the plaintiff to sit with other fans in the south-side bleachers. *Id.* at 985. The plaintiff argued that program access under 28 C.F.R. § 35.150 not only required access to football games but also to the south-side bleachers. *Id.* at 987. The Ninth Circuit acknowledged that a public program under Title II "is 'anything a public entity *does*,'" but cautioned that "those experiences that are merely incidental to normal government functions are not fairly characterized as a government program under 28 C.F.R. § 35.150." *Daubert*, 760 F.3d at 987 (italics in original) (quoting *Barden*, 292 F.3d at 1076). The Ninth Circuit identified the public program at issue as "offer[ing] football games" and not "sitting in the south-side bleachers." *Id.* Further, the court noted that the plaintiff's argument that providing bleachers is a public program "would render the program access standard meaningless." *Id.* The court stated that "[i]f program access required public entities to structurally alter existing facilities whenever the existing public

seating is not readily accessible . . . , [28 C.F.R. §] 35.150's separate provisions for existing facilities would serve no purpose." *Id.* at 988.

Daubert is instructive for setting the parameters of the "service, program, or activity" at issue here. In the same way that access to the south-side bleachers was not a public program offered by the school district in *Daubert*, so too is access to parking lots not a public program offered by UW. *See id.* at 987. Just as the bleachers in *Daubert* were merely incidental to the football games or sporting activity offered by the defendant school district, UW's parking lots are "merely incidental" to the programs offered by UW—such as UW's various educational, medical, civic, and sporting services or programs. *See id.*

This result is not contrary to *Fortyune*. In *Barden*, the Ninth Circuit explained that local governments must maintain accessible sidewalks because "maintaining public sidewalks is a normal function of a city and 'without doubt something that the City does.'" 292 F.3d at 1076 (brackets omitted) (quoting *Hason v. Med. Bd.*, 279 F.3d 1167, 1173 (9th Cir. 2002)). The "same reasoning" led the Ninth Circuit to conclude that the defendant city in *Fortyune* "must maintain accessible on-street public parking." *Fortyune*, 766 F.3d at 1102. Although the court has no doubt that maintaining on-street parking "is a normal function of a city," *see id.*, the court cannot say that the parking lots at issue here are a "normal function" of UW rather than facilities that are "merely incidental" to UW's public programs, services, and other activities. Interpreting the parking facilities otherwise would "render the program access standard [of 28 C.F.R.

§ 35.150] meaningless," against which the Ninth Circuit has cautioned.  *See Daubert*, 760 F.3d at 987.

Finally, the court notes that even Plaintiffs' own allegations reinforce the concept that UW's parking lots are facilities that are "merely incidental" to the other various programs UW offers.  For example, Plaintiffs allege that Mr. Twede "regularly travels to . . . the [UW] Medical Center," which "is frequently visited by numerous patients annually for medical treatment," and that he parks in the C20 and C21 parking lots "due to their convenient location near the . . . Medical Center."  (FAC ¶¶ 11, 13, 15.)  Similarly, Ms. Williams is a sophomore at UW who "regularly travels to UW for classes."  (*Id.* ¶ 25.)  She patronizes the N22 and W35 parking lots, which "are popular places for students attending classes and civic, social, and entertainment events at UW."  (*Id.* ¶¶ 26-27, 29.)  Likewise, Mr. Long "regularly travels to UW . . . for Spinal Cord Injury Forum meetings, medical appointments, speaking engagements, business meetings, social activities, and sporting events."  (*Id.* ¶ 18.)  He patronizes various parking lots at UW "due to their convenient location near [UW]" and because they "are popular places to park for medical appointments and civic, social, business, and sporting events."  (*Id.* ¶¶ 20-21.)  Thus, even Plaintiffs' own allegations support the conclusion that they utilize the parking facilities at issue as "incidental" to their access of UW's various educational, medical, civic, social, sporting, and other programs.  *See Daubert*, 760 F.3d at 987.

Nevertheless, even if UW's parking lots represent "a service, program, or activity" of UW, *see* 28 C.F. R. § 35.150, Plaintiffs have failed to adequately allege a

1  programmatic access claim under the ADA.  Such a claim is judged by the standard of

2  "meaningful access to a program in its entirety."  *Kirola*, 860 F.3d at 1182 (citing 28

3  C.F.R. § 35.150).  Indeed, Plaintiffs acknowledge that such a claim "requires a court to

4  consider whether, 'when viewed in its entirety,' the program at issue is accessible."  (*See*

5  Resp. at 18 (citing *Kirola*, 860 F.3d at 1183).)  Thus, under *Iqbal* and *Twombly*, Plaintiffs

6  must allege facts sufficient to show that it is plausible that they have been denied

7  "meaningful access" to parking at UW when UW's "parking service" is considered in its

8  entirety.

9         Plaintiffs' allegations relate to particular deficiencies in individual parking lots or

10  facilities.  (*See generally* FAC.)  There are no specific (or even general) allegations about

11  the accessibility of UW's alleged parking services as a whole or in its entirety.  Such

12  allegations are necessary to determine if Plaintiffs have a plausible claim that UW has

13  denied Plaintiffs meaningful access to its alleged parking services.  Indeed, individual,

14  noncompliant elements of a program or service are not necessarily relevant to whether a

15  program—in its entirety—violates that ADA.  *See, e.g.*, *Daubert*, 760 F.3d at 986-88

16  (inaccessible bleachers at a football field did not render school's football program in

17  violation of the ADA when disabled patrons could watch the game from satisfactory

18  alternate locations).  Plaintiffs have failed to allege facts sufficient to show that it is

19  plausible that they have been excluded or denied "meaningful access" to UW's alleged

20  parking services when those services are viewed in their entirety.  Accordingly, the court

21  grants this aspect of UW's motion and dismisses Plaintiffs' claims for a programmatic

22

1    access violation of the ADA for parking facilities built before and not modified since

2    January 26, 1992.

3            3.  Parking Facilities Built after January 26, 1992

4            As noted above, Plaintiffs allege "[o]n information and belief" that "the parking

5    facilities operated by . . . UW were either constructed or altered after January 26, 1992."

6    (FAC ¶ 40.)  Facilities newly built or altered after January 26, 1992, are subject to more

7    specific requirements, but the requirements for facilities constructed or altered after

8    January 26, 1992, differ "depending on the date each facility was last altered."  (MTD at

9    10.)  For example, physical construction or alterations commenced after July 26, 1992,

10   but prior to September 15, 2010, must comply with the Uniform Federal Accessibility

11   Standards ("UFAS") or the 1991 Standards for Accessible Design ("1991 Standards").

12   28 C.F.R. § 35.151(c)(1).  Physical construction or alterations commenced after

13   September 15, 2010, but before March 15, 2012, must meet either the 1991 Standards,

14   the UFAS, or the 2010 Standards for Accessible Design ("2010 Standards").  28 C.F.R.

15   § 35.151(c)(2).  Finally, if physical construction or alterations commenced on or after

16   March 15, 2012, that work must comply with the 2010 Standards.  28 C.F.R.

17   § 35.151(c)(3).[16]

18           Because the foregoing standards differ in many respect, UW argues that by failing

19   to allege the date any of the parking facilities were constructed or last altered, Plaintiffs

20

21           [16] "The UFAS is available at http://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-aba-standards/ufas.  The 1991 Standards are available at 28 C.F.R. § 36, App. D.  The 2010 Standards are available at http://www.access-board.gov/attachments/article/983/ADAstandards.pdf."  *Fortyune*, 766 F.3d at 1106 n.4.

22

failed to allege a plausible ADA claim.  (MTD at 19-21, Reply at 10-11.)  The information that UW argues that Plaintiffs must plead concerning the dates of construction or alteration to UW's parking facilities is likely to be in UW's possession.  "Where a plaintiff is at an informational disadvantage—where the information necessary to plead with greater specificity is in the possession of the defendant—courts give plaintiffs 'some benefit of the doubt to go along with the specific facts it has pled.'"  *Hamblen v. Diamante Crossroads Plaza, LLC*, No. CV 08-0561-PHX-JAT, 2009 WL 825809, at *2 (D. Ariz. Mar. 30, 2009) (concluding that the plaintiff's allegations upon belief that the defendant altered the parking lots and sidewalks in front of its stores after January 26, 1992, were sufficient to withstand a Rule 12(b)(6) motion) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009)); *see also Burrell v. Akinola*, No. 3:15-CV-3568-B, 2016 WL 3523781, at *5 (N.D. Tex. June 27, 2016) (denying motion to dismiss ADA claim based on the plaintiff's failure to plead the dates of construction or alteration).   Here, Plaintiffs are at an informational disadvantage and likely will be able to provide evidentiary support for their claims of construction or alteration after January 26, 1992, only after conducting discovery.  Given the foregoing, the court finds that Plaintiffs' allegations concerning facilities constructed or altered after January 26, 1992, are sufficient to survive a motion to dismiss.

4.  <u>Allegations Concerning Routes, Entrances, Kiosks, and Signage Added in FAC</u>

UW moves to dismiss Plaintiffs new allegations in their first amended complaint concerning "accessible routes" in the parking lots that "do not comply with the 1991 and 2010 ADA standards."  (MTD at 21-23; *see also* FAC ¶ 6.)  UW also moves to dismiss

new allegations in Plaintiffs' first amended complaint that the parking lots "contain other forms of ADA non-compliance," including "inaccessible pay kiosks, insufficient/unsafe accessible routes, including ramps, curb ramps, paths of travel, and signage barriers." (MTD at 21-23; *see also* FAC ¶ 6.)  UW argues that these allegations are insufficiently pleaded because Plaintiffs fail to provide UW with fair notice of these allegedly noncompliant architectural features.

UW relies primarily on *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011) (*see* MTD at 21-22), "which discusses the particularity of pleading required in an ADA complaint," *see Rush v. Highgrove Restaurants, Inc.*, 521 F. App'x 597, 599 (9th Cir. 2013).  In *Oliver*, the Ninth Circuit determined that an ADA plaintiff must allege all noncompliant architectural features at a facility in their complaint in order to provide fair notice under Federal Rule Civil Procedure 8(a)(2) to a defendant.  *Id.* at 909.  More recently, the Ninth Circuit relied on *Oliver* to largely uphold a district court's dismissal of several inadequately pleaded Title II ADA claims in *Gray v. County of Kerns*, 704 F. App'x 649, 650-51 (9th Cir. 2017).  The Ninth Circuit's reasoning in *Gray* guides the court here.  In *Gray*, the Ninth Circuit held that general allegations that the defendant medical center "housed 'inaccessible and unusable restroom facilities and showers in patient rooms' . . . was insufficient to put the [defendant] on notice of the specific architectural barriers [the plaintiff] asserted."  *Id* at 650.  The plaintiff also alleged that the restroom doors in the medical center "require excessive pressure to open."  *Id.*  The Ninth Circuit held that this claim sufficiently alleged the architectural barrier, but only for the two public restrooms that the plaintiff specifically identified—not for all restrooms in

the medical center.  Next, the Ninth Circuit held that the plaintiff had adequately alleged "[e]xcessive slopes and cross slopes on the ramps leading into and out of the [m]edical [c]enter building" because he identified both the specific ADA violation and the location—given "the limited number of ramps leading into and out of the [m]edical [c]enter building.  *Id.*  The allegation, however, "did not . . . put the [defendant] on notice of any ADA violations as to the exterior paths or as to any handrails" at the medical center.  *Id.*  Finally, the Ninth Circuit found the plaintiff's claim that the drinking fountains in the medical center are inaccessible and too high to be inadequately alleged because the plaintiff did "not sufficiently identify the location of these fountains."  *Id.*

Based on the Ninth Circuit's rulings and analysis in *Oliver* and *Gray*, the court concludes that Plaintiffs' allegations concerning accessible routes, building entrances, payment kiosks, ramps, curb ramps, paths of travel, and signage barriers in paragraph six of their first amended complaint are insufficient, by themselves, because they fail to place UW on notice of the specific noncompliant features at issue or the location of those features.  However, as Plaintiffs note, some of these noncompliant features and their locations are specifically identified in the exhibits to Plaintiffs' first amended complaint.  (*See* Resp. at 23 & n.51 (citing FAC Ex. A ¶¶ 1(a), 2(a), 3(a), 4(a), 7(a), 8(a), 9(a), 10(a), 11(a), 12(a), 19(a); Ex. B ¶¶ 1(a), 9(a), 16(a), 19(a); Ex. C ¶¶ 1(a), 5(a); Ex. D at ¶¶ 3(a), 4(a), 6(a), 7(a), 10(a), 12(a), 14(a); Ex. E ¶¶ 3(a), 4(a), 5(a), 7(a), 9(a), 11(a), 13(a), 15(a), 16(a)).)  Thus, to the extent these allegedly noncompliant features and their locations are identified in the exhibits to Plaintiffs' first amended complaint, UW's motion is denied.  However, the court grants UW's motion and dismisses Plaintiffs' claims concerning the

allegedly noncompliant features that are not identified in the first amended complaint's exhibits.[17]

**D.    Leave to Amend the First Amended Complaint**

Plaintiffs ask the court for leave to amend their first amended complaint.  (Resp. at 23-24.)  The standard for granting leave to amend is generous—the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In determining whether leave to amend is appropriate, a court must consider the following five factors:  (1) bad faith, (2) undue delay, (3) whether the plaintiff previously amended the complaint, (4) prejudice to the opposing party, and (5) futility of amendment.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  Here, the court denies Plaintiffs leave to amend their first amended complaint for a number of reasons.

First, granting leave to amend would cause undue delay in the proceedings and would be prejudicial.  The discovery cutoff in this case was February 6, 2018.  (12/15/17 Order (Dkt. # 43) (extending discovery cutoff from 1/22/2018 to 2/6/18).)  Dispositive motions are presently due on February 20, 2018, and trial will commence on May 21, 2018.  (Sched. Order (Dkt. # 15) at 1.)  The court previously granted Plaintiffs leave to amend their allegations.  (*See* MTA (Dkt. # 20); Min. Entry (Dkt. # 29) (granting motion to amend).)  Allowing Plaintiffs to further amend their first amended complaint at this

---

[17] UW asks the court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  (MTD at 23.)  Because the court has not dismissed all of Plaintiffs' federal claims, the court denies UW's request.  *See* 28 U.S.C. § 1367(c)(3) (granting district courts discretion to decline supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction").

late date and on the eve of the dispositive motions deadline would force the court to delay these proceedings. To avoid prejudice, the court would be required to reopen discovery and postpone both the dispositive motions deadline and trial. Accordingly, the court is disinclined to grant leave to amend under these circumstances. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (concluding that the trial court did not abuse its discretion in denying leave to amend where allowing the amendment "would have required re-opening discovery, thus delaying the proceedings").

In addition, it would be futile for the court to grant Plaintiffs leave to amend their claims concerning the 51 parking facilities that they have not visited. The court has ruled as a matter of law that Plaintiffs lack standing to assert ADA violations with respect to these parking lots. The court's ruling rests on the absence of allegations suggesting that Plaintiffs are likely to visit, have any intention or desire to visit, or will incur harm at any of the 51 parking facilities that they have not visited. *See supra* § III.B.2. Allowing Plaintiffs to amend to so allege now would be inconsistent with both Plaintiffs' original and first amended complaint. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir.1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading.'") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

It also would be futile to grant leave to amend Plaintiffs' claims concerning UW's parking facilities that were built prior to January 26, 1992, and not subsequently modified. The court has ruled as a matter of law that these facilities do not constitute a service or program that falls within the confines of 28 C.F.R. § 35.150. *See supra*

§ III.C.2.  Additional factual allegations cannot alter that legal conclusion.  *See Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1298 (9th Cir. 1998) ("[A] general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal.") (internal citations omitted).  Thus, the court denies leave to amend these claims.

Finally, the court also denies Plaintiffs leave to amend the new allegations added to their first amended complaint concerning accessibility routes, entrances, kiosks, and signage.  *See supra* § III.C.4.  Plaintiffs added these allegations after the court granted their motion to amend their original complaint.  (*See* MTA; Min. Entry.)  With their original complaint, Plaintiffs filed five exhibits providing descriptions and pictures of alleged ADA violations throughout the UW parking lots at issue in their complaint.  (*See* Compl. Exs. A-E.)  Plaintiffs did not amend these exhibits when they amended their complaint, but rather attached the same exhibits to their first amended complaint.  (*See* FAC Exs. A-E.)  As Plaintiffs acknowledge in their response to UW's motion to dismiss, these exhibits "identify accessible route, signage, and kiosk violations."  (Resp. at 23.) Plaintiffs had the opportunity to amend these exhibits to identify additional alleged violations with respect to these issues when they filed their first amended complaint, but they chose not to do so.  Because Plaintiffs have already had the opportunity to amend their complaint concerning these claims, the court declines to grant them an additional opportunity now.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is

particularly broad where plaintiff has previously amended the complaint.") (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)); *see also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the plaintiff has previously filed an amended complaint . . . the district court's discretion to deny leave to amend is particularly broad.") (citation and internal quotation marks omitted).  For all of the foregoing reasons, the court denies Plaintiffs' request to amend their first amended complaint.

## IV.    CONCLUSION

Based on the analysis herein, the court GRANTS in part and DENIES in part UW's motion to dismiss (Dkt. # 32).  The court DENIES Plaintiffs' request for leave to amend their first amended complaint (Dkt. # 35).

Dated this 13th day of February, 2018.

JAMES L. ROBART
United States District Judge